UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROSE STERLING,

                    Plaintiff,

          -against-

ACS (ADMINISTRATION FOR CHILDREN
SERVICES); HRA (HUMAN RESOURCES
ADMINISTRATION, SOCIAL SERVICES);
MEDICAID; CITY OF NEW YORK,

                    Defendants.

1:24-CV-5936 (LTS)

ORDER OF DISMISSAL
WITH LEAVE TO REPLEAD

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff Rose Sterling, who appears *pro se*, filed this action invoking the court's federal

question jurisdiction, and she asserts the following types of claims:

> [1)] Procedural Due Process Claim Under Fourteenth Amendment/42 U.S.C.
> [§] 1983; 2) Substantive Due Process [Claim]/ . . . [Section] 1983 Under
> Fourteen[th] Amendment; 3) Eight[h] Amendment/Due Process, Equal Protection/
> . . . [Section] 1983; 4) [claims of violations of] 18[] U.S.C. [§] 241 – Conspiracy
> Against Rights . . .; 5) [claims of violations of] . . . 18 [U.S.C. §] 242 –
> Deprivation of Rights Under Color of Law; 6) [claims of violations of] 42 [U.S.C.
> §] 14141 – Pattern and Practice[;] [and] 7) [claims of violations] Federal and State
> Regulations: 42 C.F.R. [§] 431[,] 205; N.Y. Soc. Serv. [§] 22(1).

(ECF 1, at 2.) She sues: (1) the New York City Administration for Children's Services ("ACS");

(2) the New York City Human Resources Administration ("HRA"), a subdivision of the New

York City Department of Social Services; (3) "Medicaid," which the Court construes as the State

of New York[1]; and (4) the City of New York. Plaintiff seeks damages, and injunctive relief "to

---

[1] Medicaid is a federal program administered by the States and, within the State of New
York, the New York State Department of Health is the state agency responsible for its
administration. *See* N.Y. Soc. Serv. Law § 363-a; *Shakhnes v. Berlin*, 689 F.3d 244, 247-48 (2d
Cir. 2012).

protect her against the defendants . . . and their Jewish network[] co-conspirators with whom they continuously conspire to destroy [her] whole life.[2] (*Id.* at 6.)

By order dated September 6, 2024, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. The Court construes Plaintiff's complaint as asserting violations of federal criminal statutes, civil claims of violations of federal constitutional rights brought under 42 U.S.C. § 1983, civil claims of violations of 34 U.S.C. § 12601 (formerly cited as 42 U.S.C. § 14141), as well as civil claims under state law. For the reasons discussed below, the Court dismisses this action, but grants Plaintiff 30 days' leave to replead certain claims in an amended complaint.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction of the claims raised. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470

---

[2] Under Rule 5.2(a)(2) of the Federal Rules of Civil Procedure, a court submission must not reveal the complete date of birth of an individual; a court submission must only refer to an individual's birth year. *See* Fed. R. Civ. P. 5.2(a)(2). A person waives the redaction protections of this rule if she reveals her own complete date of birth. *See* Fed. R. Civ. P. 5.2(h). Because Plaintiff's complaint reveals the complete date of birth of a person other than Plaintiff, however, the Court has directed the Clerk of Court to restrict electronic access to the complaint to a "case participant-only" basis.

F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

Rule 8 requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Because Plaintiff's previous litigation in this court is of legal significance with respect to this action, the Court will recount Plaintiff's previous relevant litigation history in this court before summarizing the allegations in Plaintiff's present complaint.

### A.    *Sterling v. Human Res. Admin. (Soc. Servs.)*, **1:21-CV-10192 (LTS) (S.D.N.Y.)**

On November 27, 2021, Plaintiff filed a *pro se* action in this court in which she named HRA as the sole defendant in her original complaint. That action was designated as *Sterling v. Human Res. Admin. (Soc. Servs.)*, 1:21-CV-10192 (LTS) (S.D.N.Y.) ("*Sterling I*"). *Sterling I* was assigned to the undersigned. By order dated February 2, 2022, the Court granted Plaintiff

leave to file amended complaint within 60 days of the date of that order. *Sterling v. Human Res. Admin. (Soc. Servs.)*, No. 1:21-CV-10192 (LTS), 2022 WL 329266 (S.D.N.Y. Feb. 2, 2022). In that order, the Court noted that, in *Sterling I*, Plaintiff was asserting claims that HRA was responsible for the death of her adult son, Bob V.E. Sterling. *Id.* at *1. The Court summarized the following allegations from Plaintiff's original complaint in *Sterling I*:

> Plaintiff was the caregiver for her son, Bob, who had unspecified disabilities and suffered from asthma. On unspecified dates, [ACS] "baselessly" accused Plaintiff of abusing Bob, and later ACS's contractor, Good Shepherd Services, wrote false reports, one of which became the basis for institutionalizing Bob and attempting to deport Plaintiff. ACS and Good Shepherd also
>
> > collected [their] personal event, the one not related to the case at stake, then dispatched [their] personal information to their friends, family, and ethnic networks, blocked rights to access to adequate and affordable housing, a right that gives priority to children under ACS to adequate housing.
>
> Despite these obstacles, Plaintiff and Bob found a "small place," on which ACS refused to pay "the $1800 down payment, which was wrong."
>
> Sometime later, HRA switched Bob's Medicaid insurance to an Aetna plan with a life insurance program without informing Bob or Plaintiff of the change. Aetna subsequently denied Bob "medications and standard care," including an inhaler for his asthma. Plaintiff and Bob went to HRA and "pleaded for help," including switching back to Medicaid, but HRA did not correct the matter. On November 28, 2020, while taking a shower, Bob collapsed in the bathtub and died.
>
> Plaintiff attributes Bob's "premature death" to the denial of medication, particularly the inhaler. She asserts the following as her injuries:
>
> > Death of my beloved son Bob, along with, severe emotional distress; deep pain and suffering; alienation of my whole personal, familial and professional lives; the introduction of the HRA along with its phony agencies and preventives services have created a hostile environment for me, especially had set all Jewish groups for which Jennie Amanda Herz and Allen McCormick who were paid to collect out personal are after me because I have detected their scheme, denounced them to state and federal governments. Although I committed no crime, they have been using the solidarity of their network to take revenge on me and Bob, including at the workplace, and hospital and clinic controlled by them where Bob was giving the deadly shot that provoked his breathing problems and led to his

death (and this is consistent with the cause of Bob's death on his Death
Certificate.

Plaintiff asks the Court "to recuperate the unethical death benefit that was the
motive and cause of denying [Bob] medications that led to his death."

*Id.* at *2 (citations and footnote omitted, alterations in original). The Court also construed
Plaintiff's complaint as asserting, notwithstanding Plaintiff's lack of standing to assert claims on
behalf of the estate of her deceased son, "a claim [under Section 1983] that HRA improperly
changed Bob's Medicaid benefits without notice or consent, depriving him of a property interest
without due process of law in violation of the Fourteenth Amendment." *Id.* at *3.

The Court held that Plaintiff lacked standing to assert claims on behalf of the estate of her
deceased son. *Id.* at *2-3. The Court noted that Plaintiff did "not assert that she was denied
access to the fair hearing process or that the state courts were unavailable to challenge the
alleged deprivation." *Id.* at *4. The Court also noted that Plaintiff had asserted, "in [a] January
14, 2022 letter[,] that she [was] . . . in administrative proceedings regarding the change of Bob's
insurance from Medicaid to Aetna[,] and that she has requested a Fair Hearing." *Id.* (citation
omitted). The Court further noted that Plaintiff suggested "that she [was] resorting to this court in
anticipation that her available state post-deprivation remedies may result in an unsatisfactory
decision." *Id.* The Court ruled that "[t]he possibility of an adverse decision is not sufficient for a
denial of due process claim [under Section 1983], so long as available post-deprivation
procedures are constitutionally adequate." *Id.* The Court granted Plaintiff 60 days' leave to file
an amended complaint in response to that order. *Id.* at *4-5.

Plaintiff filed an amended complaint, again asserting claims under Section 1983, and
naming ACS, Medicaid, and HRA as defendants. By order dated August 1, 2022, the Court
dismissed *Sterling I*; the Court dismissed Plaintiff's claims that she asserted on behalf of her
deceased son, Bob, for lack of standing, and her own claims for failure to state a claim on which

relief may be granted. *Sterling v. Human Res. Admin. (Soc. Servs.)*, No. 1:21-CV-10192 (LTS),

2022 WL 3030613 (S.D.N.Y. Aug. 1, 2022), *appeal dismissed*, No. 22-1892 (2d Cir. Jan. 11,

2023). The Court summarized the following allegations in Plaintiff's *Sterling I* amended

complaint:

> Plaintiff sues HRA and two new defendants, ACS and "Medicaid," which she
> identifies as an agency of the City of New York. She claims that after ACS
> "baselessly" accused her of child abuse, it began a process where she was
> obligated to deal with HRA and ACS, "along with its destructive and phony
> preventive services, Good Shepherd in the Bronx." Plaintiff asserts that
> Defendants "established a special relationship" with her and that they must be
> held accountable for their allegedly unconstitutional actions, which include
> depriving her of her "parental duties, and the right to have appropriate, timely, and
> necessary health insurance" for her son.
>
> Plaintiff provides largely the same factual allegations from the initial complaint,
> but she expands on the role that ACS played in the lives of Plaintiff and her son.
> The following information is taken from the amended complaint. After Plaintiff
> became a widow, she and Bob returned to New York City from Florida. She
> claims that the Florida Jewish community had animus towards her because she
> refused to take a "baseless[] psychiatric evaluation," "saved" Bob from a "Jewish
> psychiatric camp," and "hampered" the foreclosure of the Florida house she had
> lived in. Unnamed members of the Florida Jewish community "succeeded" in
> getting revenge against Plaintiff through ACS and Allen McCormick, whom
> Plaintiff describes as "a human trafficker from Florida, who bridged the NYC
> Jewish networks" and was paid by New York City. ACS, with the assistance of
> McCormick, "infiltrated" and disrupted Plaintiff's and Bob's lives. In particular,
> ACS accused her of child abuse and allowed Good Shepherd to discriminate
> against her and deprive her of her parental rights. ACS also violated her right to
> privacy; destroyed her career and "professional potential"; mandated her
> participation in a drug rehabilitation program although she had never touched
> drugs; and discriminated against her with "racist allegations." In all, ACS's false
> accusations led to "consequences [that] persist through [Plaintiff's] son's life and
> after his death on [her]."
>
> Further, "HRA (Social Services) and the Medicaid accelerated [Plaintiff's] pain"
> by ignoring her pleas to help save Bob's life. Bob was a person with disabilities,
> who suffered from psychosis and had breathing problems as a result of a shot he
> had received at a clinic at St. Barnabas Hospital. At some unspecified point, Bob's
> insurance, which was handled by HRA, was changed to a "non-consented and
> hidden Aetna life insurance," which "blocked all access to all existential
> medications." Bob was "prematurely killed . . . because the HRA (Social
> Services) and the Medicaid, which have constitutional duties to handle poor
> people and people with disabilities like Bob," for years, "denied Bob medications

and access to standard care through silence, no action, no information or communication on why Bob was not fully insured." Plaintiff asserts that

> the HRA, and the Medicaid intentionally, cruelly, and recklessly deprived me from adequately and efficiently taking care of my child, whom the ACS had accused me of abusing [], and yet, under their responsibility and watch, the Medicaid and the HRA cut Bob's access to medications and standard care, in the process, they created cruel and unbearable situation to me, see my child suffers because the NYC's agencies and its employees had cruelly, inhumanely, and unconstitutionally deprived my son Bob of the right to his life and alleviating his suffering, and also, of any existential help within and under their constitutional duties.

> Plaintiff brings this action asserting that as a result of Defendants' actions – particularly ACS's alleged "infiltration" of hers and Bob's lives and HRA's and Medicaid's "intentionally and recklessly depriv[ing]" her of all information about her disabled child health insurance, which made her unable to take care of her child adequately and save his life – she suffered "cruel and unbearable pain" by having to watch Bob in "deep pain" for years. Plaintiff claims that Defendants violated her civil rights and that, as a mother, she is entitled to compensation for the alleged violations that occurred.

*Id.* at *2-3 (citations omitted, alternations in original).

The Court held that Plaintiff lacked standing to assert claims on behalf of her deceased son Bob or his estate. *Id.* at *3. The Court also dismissed, for failure to state a claim on which relief may be granted, Plaintiff's own claims against HRA and ACS because, as agencies of the City of New York, neither of those agencies are suable entities. *Id.* at *4. The Court further construed "Medicaid" as the New York State Department of Health, and dismissed Plaintiff's claims against it because it is not an entity that can be sued, *id.*, and because, under the doctrine of Eleventh Amendment immunity, it was immune from suit, *id.* at *4 n.2. In addition, the Court understood Plaintiff's amended complaint as asserting claims under Section 1983 against the City of New York. *Id.* at *4. The Court noted that, as it concluded in its February 2, 2022 order, "Plaintiff's assertions concerning the change in her son's Medicaid insurance [did] not state a procedural due process claim under the Fourteenth Amendment because she did not allege facts suggesting that either she or Bob was deprived of a property interest without due process." *Id.* It

also noted that "Plaintiff's amended complaint provide[d] no additional factual allegations to change that conclusion." *Id.* The Court further held that Plaintiff did "not address[,] in the amended complaint[,] the availability or sufficiency of the City of New York's procedures or whether she was given the opportunity to challenge the alleged change in Bob's Medicaid or any other alleged deprivations." *Id.* The Court held that Plaintiff had failed to state a claim under Section 1983 against the City of New York "[b]ecause Plaintiff [did] not allege that the City of New York's notice and hearing procedures were constitutionally deficient in any way." *Id.*

The Court declined to consider Plaintiff's claims in her amended complaint that arose from "discrimination and the deprivation of her parental rights when ACS [allegedly] wrongfully accused her of child abuse and removed her son from her care," including "any claim . . . that may implicate the substantive component of the Due Process Clause of the Fourteenth Amendment," as it was "beyond the scope of the permitted amendment." *Id.* at *4 n.3. To the extent that Plaintiff's amended complaint could be construed as asserting claims under state law, brought under the court's supplemental jurisdiction, the Court declined to exercise that jurisdiction. *Id.* at *5. The Court also declined to grant Plaintiff further leave to amend. *Id.*

Plaintiff appealed. On January 11, 2023, the United States Court of Appeals for the Second Circuit dismissed the appeal, holding that Plaintiff could not assert claims *pro se* on behalf her deceased son's estate because she had not shown that she had been appointed as the estate's personal representative and that the estate had no other beneficiaries or creditors; the Court of Appeals further dismissed Plaintiff's appeal as frivolous as to this Court's conclusion that Plaintiff had failed to state a claim on her own behalf. *Sterling v. Human Res. Admin. (Soc. Servs.)*, No. 22-1892 (2d Cir. Jan. 11, 2023).

B.       **The present complaint**

In the present complaint, Plaintiff sues ACS, HRA, "Medicaid," which the Court construes as the State of New York, and the City of New York. She cites federal civil and criminal statutes as the legal bases for her claims, and seeks damages and injunctive relief. Plaintiff alleges that the events that are the bases for her claims have occurred in New York City, "since the starting of the case to today, in the year 2023." (ECF 1, at 5.) She seems to reassert, in the present complaint, many, if not, all of the claims that she asserted in *Sterling I*, including claims arising from alleged "discrimination and the deprivation of her parental rights when ACS [allegedly] wrongfully accused her of child abuse and removed her son from her care," including "claim[s] . . . that may implicate the substantive component of the Due Process Clause of the Fourteenth Amendment," which the Court declined to consider, as it was beyond the scope of the permitted amendment. *Sterling*, 2022 WL 3030613, at *4 n.3. She also seems to assert claims of employment discrimination with regard to her employment with an undisclosed community college and/or her attempt to secure employment with the City of New York.

## DISCUSSION

A.       **Private prosecution**

By citing federal criminal statutes, Plaintiff seems to seek the federal criminal prosecution of the defendants and/or others. If that is the case, the Court must dismiss the claims seeking such relief. Plaintiff cannot initiate a criminal prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff

lacks standing to cause the federal criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the Court dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the federal criminal prosecution of anyone, including the defendants, *see* Fed. R. Civ. P. 12(h)(3); *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III standing, a [federal] court has no subject matter jurisdiction to hear [his] claim." (internal quotation marks and citation omitted)).

**B.      Claims of behalf of Plaintiff's deceased son's estate**

Plaintiff seems to, once again, as she did in *Sterling I*, assert claims *pro se* on behalf of her deceased son's estate. The Court must dismiss these claims for the same reasons it did in *Sterling I*, and also for the reasons cited by the Second Circuit in Plaintiff's unsuccessful appeal of the dismissal of that action. The statute governing appearances in federal court, 28 U.S.C. § 1654, "allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a governmental regulatory body, and that by a person representing [herself].'" *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926 F.2d 1305, 1308 (2d Cir. 1991)). A nonlawyer cannot bring suit on behalf of another person. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998). In addition, a nonlawyer beneficiary is not permitted to assert claims on behalf of a deceased person's estate *pro se* when there are other beneficiaries or creditors of that estate. *Compare Pappas v. Philip Morris, Inc.*, 915 F.3d 889, 893 (2d Cir. 2019) ("[W]hen the administrator and sole beneficiary of an estate with no creditors seeks to appear *pro se* [in federal court] on behalf of the estate, she is in fact appearing solely on her own behalf, because she is the only party affected by the disposition of the suit. Under those circumstances, the assignment of the sole beneficiary's claims to a paper entity – the estate – rather than to the beneficiary herself, is only a legal fiction." (citing *Guest v. Hansen*, 603 F.3d 15, 20-21 (2d Cir.

2010)), *with Guest*, 603 F.3d at 20 ("Where there are other beneficiaries, 'an action cannot be described as the litigant's own, because the personal interests of the estate, other survivors, and possible creditors . . . will be affected by the outcome of the proceedings." (quoting *Iannaccone*, 142 F.3d at 559)). In addition, as the Second Circuit noted in Plaintiff's appeal of the dismissal of *Sterling I*, Plaintiff "may not assert pro se claims on behalf of her deceased son's estate unless she has been appointed the estate's personal representative." *Sterling*, No. 22-1892 (2d Cir. Jan. 11, 2023) (citing *Palladino v. Metro. Life Ins. Co.*, 188 A.D. 2d 708, 709 (3d Dep't 1992), and *Heslin v. Cnty. of Greene*, 14 N.Y.3d 67, 76 n.7 (2010)).

As the Court noted in *Sterling I*, Plaintiff alleges no facts as to whether, other than herself, there are beneficiaries or creditors associated with her deceased son's estate. In addition, Plaintiff alleges nothing to suggest that she has been appointed the estate's personal representative. Accordingly, once again, to the extent that Plaintiff asserts claims on behalf of her deceased son's estate, the Court dismisses these claims without prejudice.

## C.    Claims under Section 1983 and under state law against the State of New York

The Court understands Plaintiff's present complaint as asserting claims under Section 1983, as well as claims under state law, brought on her own behalf, against the State of New York. The Court must dismiss these claims under the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogate[d] the states' Eleventh Amendment immunity. . . ." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks and citation omitted). This immunity shields States from claims for money damages,

injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). It also precludes a plaintiff from seeking, in federal court, relief under state law against a State or one its agencies. *See Raygor v. Regents of Univ. of Minn.*, 534 U.S. 533, 540-42 (2002); *Halderman*, 465 U.S. at 120-21; *In re Charter Oak Assocs.*, 361 F.3d 760, 765 (2d Cir. 2004) ("Although the text of the [Eleventh] Amendment would appear to restrict only the Article III diversity jurisdiction of the federal courts, it has been construed more broadly to render states and their agencies immune from suits brought by private parties in federal court." (internal quotation marks and citation omitted)); *see also Bertoldi v. State*, 275 A.D. 2d 227, 228 (1st Dep't 2000) ("It is well settled that the [New York] Court of Claims has exclusive jurisdiction over actions for money damages against the State [of New York], [New York] State agencies, or [New York] State officials acting in their official capacities in the exercise of governmental functions.").

Congress has not abrogated the States' immunity for claims under Section 1983, *see Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990), and the State of New York has not waived its immunity to suit in federal court, *see Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977); *Bertoldi*, 275 A.D. 2d at 228. Any claims under state law that Plaintiff asserts against the State of New York may only be considered by the appropriate state courts. *Gollomp*, 568 F.3d at 357 n.2; *Bertoldi*, 275 A.D. 2d at 228. Thus, this Court lacks jurisdiction of these claims.

Accordingly, the Court dismisses Plaintiff's claims, brought on her own behalf, under Section 1983 and under state law against the State of New York under the doctrine of Eleventh Amendment immunity, for lack of subject matter jurisdiction and because Plaintiff appears to seek monetary relief from a defendant that is immune from such relief. *See* 28 U.S.C.

§ 1915(e)(2)(B)(iii); Fed. R. Civ. P. 12(h)(3*); see Close v. New York*, 125 F.3d 31, 38-39 (2d Cir. 1997) ("[U]nless New York waived its immunity, the district court lacked subject matter jurisdiction."); *Atl. Healthcare Benefits Trust v. Googins*, 2 F.3d 1, 4 (2d Cir. 1993) ("Although the parties do not address the Eleventh Amendment in their briefs, we raise it *sua sponte* because it affects our subject matter jurisdiction.").

**D.    Claims under 34 U.S.C. § 12601**

Inasmuch as Plaintiff asserts claims, brought on her own behalf, under the Violent Crime Control and Law Enforcement Act of 1994, originally codified 42 U.S.C. § 14141 and recodified at 34 U.S.C. § 12601, the Court must dismiss these claims. That statute only allows the United States Attorney General to bring a civil action for a violation of that statute, 34 U.S.C. § 12601(b); it does not provide a private right of action for individuals, *see*, *e.g.*, *Ballentine v. New York*, No. 1:24-CV-4615 (LTS), 2024 WL 4870833, at *2 (S.D.N.Y. Nov. 21, 2024); *Peralta v. City of New York*, 1:23-CV-10785 (JMF), 2024 WL 1704774, at *7 (S.D.N.Y. Apr. 18, 2024), *aff'd*, No. 24-1356-cv, 2024 WL 4866704 (2d Cir. Nov. 22, 2024) (summary order); *Wilson v. City of New York*, No. 23-CV-7771, 2024 WL 1308706, at *1 n.2 (E.D.N.Y. Mar. 26, 2024); *Ming v. Brouillete*, No. 6:23-CV-0086, 2023 WL 5779558, at *4 (N.D.N.Y. Apr. 7, 2023), *report & recommendation adopted*, 2023 WL 5444485 (N.D.N.Y. Aug. 24, 2023); *Sathue v. Niagara City Police Dep't*, No. 17-CV-0747, 2018 WL 550520, at *3 (W.D.N.Y. Jan. 25, 2018), *appeal dismissed*, No. 18-349, 2018 WL 7253596 (2d Cir. June 7, 2018). The Court therefore dismisses these claims for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

**E.    The doctrine of issue preclusion**

Plaintiff appears to reassert claims in this action, on her own behalf, that she asserted in *Sterling I*. The Court must, under the doctrine of issue preclusion, dismiss all of the claims raised

in the present action that the Court previously adjudicated on the merits in *Sterling I*.[3] This

doctrine, also known as "collateral estoppel," bars relitigation of a specific legal or factual issue

in a subsequent proceeding: where (1) the issues in both proceedings are identical, (2) the issue

in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair

opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was

necessary to support a valid and final judgment on the merits. *See, e.g.*, *Grieve v. Tamerin*, 269

F.3d 149, 153 (2d Cir. 2001) (citation and internal quotation marks omitted, alteration in

original); *accord Seneca Nation v. Hochul*, 58 F.4th 664, 668 (2d Cir. 2023). This doctrine "bars

successive litigation of an issue of fact or law actually litigated and resolved in a valid court

determination essential to the prior judgment, even if the issue recurs in the context of a different

claim." *Marcel Fashions Grp., Inc. v. Lucky Brand Dungarees, Inc.*, 779 F.3d 102, 108 (2d Cir.

2015) (internal quotation marks and citation omitted); *Fresh Del Monte Produce Inc.*, No. 13-

CV-8997 (JPO), 2016 WL 236249, at *5 (S.D.N.Y. Jan. 20, 2016) ("It is *issue preclusion*, not

claim preclusion, which permits 'an issue of fact or law [] actually litigated and determined by a

valid and final judgment, and . . . essential to the judgment' to be 'conclusive in a subsequent

action between the parties, whether on the same or a different claim.'" (quoting Restatement

(Second) of Judgments § 27, p. 250 (1980) (emphasis in original, alteration in original))); *see*

*generally Baker v. Gen. Motors Corp.*, 522 U.S. 222, 234 (1998) ("We see no reason why the

preclusive effects of an adjudication on parties and those 'in privity' with them, *i.e.*, claim

---

[3] These claims do not include any arising from alleged "discrimination and the deprivation of [Plaintiff's] parental rights when ACS [allegedly] wrongfully accused her of child abuse and removed her son from her care," including "claim[s] . . . that may implicate the substantive component of the Due Process Clause of the Fourteenth Amendment," which the Court declined to consider in *Sterling I*, as it was beyond the scope of the permitted amendment. *Sterling*, 2022 WL 3030613, at *4 n.3. They also do not include Plaintiff's claims of employment discrimination.

preclusion and issue preclusion (res judicata and collateral estoppel), should differ depending solely upon the type of relief sought in a civil action." (footnote omitted)). "A previous dismissal for failure to state a claim is a decision made on the merits for the purpose of future applications of issue preclusion." *Curcio v. Grossman*, No. 22-CV-1648 (VB), 2022 WL 767167, at *4 (S.D.N.Y. Mar. 14, 2022), *aff'd*, No. 22-693, 2023 WL 31183 (2d Cir. Jan. 4, 2023) (summary order); *see Sun v. Mo*, No. 1:24-CV-3630 (KPF), 2024 WL 3639158, at *9 (S.D.N.Y. Aug. 2, 2024) (quoting *Curcio*, 2022 WL 767167, at *4); *Jackson v. Warner Music Grp. Corp.*, No. 1:23-CV-10100 (LTS), 2024 WL 2958936, at *7 (S.D.N.Y. June 11, 2024) (same); *Clark v. DMV*, No. 1:22-CV-3086 (JGK), 2022 WL 1471349, at *9 (S.D.N.Y. May 9, 2022) (same); *Nealy v. Berger*, No. 08-CV-1322, 2009 WL 704804, at *10 (E.D.N.Y. Mar. 16, 2009). The same is true with regard to a previous identical dismissal under the doctrine of Eleventh Amendment immunity. *See Wu v. Civil Court of the City of New* York, No. 1:21-CV-8668 (LTS), 2022 WL 525561, at *2-3 (S.D.N.Y. Feb. 22, 2022); *Stinson v. City Univ. of N.Y.*, No. 1:19-CV-4191 (LLS); 2019 WL 3287958, at *3-4 (S.D.N.Y. July 19, 2019); *Kozaczek v. N.Y. Higher Educ. Servs. Corp.*, No. 1:13-CV-0074, 2014 WL 2112691, at *2 (D. Vt. May 20, 2014); *see also Mir v. Kirchmeyer*, No. 20-1659, 2021 WL 4484916, at *2 (2d Cir. Oct. 1, 2021) (summary order) (for the purposes of issue preclusion, a "dismissal [because of absolute immunity] was a full and fair adjudication on the merits of an issue – an immunity defense – that was essential to its judgment"). The Court may, on its own initiative, raise the defense of issue preclusion. *See Thai-Lao Lignite (Thailand) Co., Ltd. v. Gov't of the Lao People's Democratic Republic*, 864 F.3d 172, 191 (2d Cir. 2017); *Curry v. City of Syracuse*, 316 F.3d 324, 331 (2d Cir. 2003) (citing *Doe v. Pfrommer*, 148 F.3d 73, 80 (2d Cir. 1998)).

Plaintiff seems to assert what appear to be claims on her own behalf in this action against ACS, HRA, and, thus, the City of New York, as well as against the State of New York, that are identical to the claims that she asserted on her own behalf in *Sterling I*. These claims were dismissed on the merits, and Plaintiff had a full and fair opportunity to litigate these claims in this court and in her unsuccessful appeal in the Second Circuit. Accordingly, to the extent that Plaintiff asserts claims on her own behalf in this action against ACS, HRA, the City of New York, and the State of New York that are identical to the ones that she asserted in *Sterling I* and that were dismissed on the merits in that action, including any based on an Eleventh Amendment immunity defense, the Court dismisses these claims for failure to state a claim on which relief may be granted, under the doctrine of issue preclusion (collateral estoppel). *See* § 1915(e)(2)(B)(ii); *Wachtmeister v. Swiesz*, 59 F. App'x 428, 429 (2d Cir. 2003) (summary order) (a dismissal for issue preclusion is a dismissal for failure to state a claim on which relief may be granted); *Whitfield v. City of New York*, No. 1:20-CV-4674 (JMF), 2024 WL 5202698, at *4 (S.D.N.Y. Dec. 23, 2024) (quoting *Wachtmeister*, 59 F. App'x at 429); *Sun*, 2024 WL 3639158, at *10; *Jackson*, 2024 WL 2958936, at *7; *Curcio*, 2022 WL 767167, at *5.

## F.    Remaining claims under Section 1983 against ACS, HRA, and the City of New York

With respect to Plaintiff's remaining claims under Section 1983 against ACS, HRA, and the City of New York – those that could not dismissed above under the doctrine of issue preclusion (collateral estoppel) – the Court must dismiss these claims for other reasons. As agencies of the City of New York, ACS and HRA are not entities that can be sued. N.Y. City Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law."); *Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the

capacity to be sued under *its municipal charter*." (emphasis in original)); *Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007); *Wellington v. City of New York*, 1:24-CV-8743 (JLR), 2025 WL 41950, at *1 (S.D.N.Y. Jan. 7, 2025) (HRA); *R.M. v. City of New York*, 1:24-CV-3001 (JMF), 2024 WL 4149870, at *2 (S.D.N.Y. Sept. 11, 2024) (ACS and other city agencies); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited from suing a municipal agency."). The Court therefore dismisses Plaintiff's these claims under Section 1983 against ACS and HRA for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

With respect to Plaintiff's claims under Section 1983 against the City of New York that could not be dismissed above under the doctrine of issue preclusion (collateral estoppel), the Court must now dismiss these claims as well. When a plaintiff sues a municipality, like the City of New York, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dept of Soc. Servs.*, 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and; (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted).

A plaintiff may satisfy the policy or custom requirement by alleging one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of the those who come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

As to Plaintiff's remaining claims under Section 1983 against the City of New York, Plaintiff alleges no facts showing that a policy, custom, or practice of the City of New York contributed to a violation of her federal constitutional rights. The Court therefore dismisses these remaining claims under Section 1983 against the City of New York for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but grants Plaintiff leave to replead these claims in an amended complaint in which she names the City of New York (and no agency of the City of New York) as a defendant, and in which she alleges facts sufficient to state a claim under Section 1983 against the City of New York that was not dismissed in *Sterling I* on the merits for the purposes of issue preclusion (collateral estoppel) or was dismissed above under that doctrine.

**G.    Statute of limitations with respect to some remaining claims under Section 1983**

It appears that at least some of Plaintiff's remaining claims under Section 1983 – those of about "the deprivation of [Plaintiff's] parental rights when ACS [allegedly] wrongfully accused her of child abuse and removed her son from her care," including "claim[s] . . . that may implicate the substantive component of the Due Process Clause of the Fourteenth Amendment," *Sterling*, 2022 WL 3030613, at *4 n.3 – are untimely. Within the State of New York, there is a three-year limitations period for claims brought under Section 1983. *Owens v. Okure*, 488 U.S. 235 (1989) (adopting three-year limitations period in N.Y.C.P.L.R. § 214(5) for claims under

Section 1983 arising within the State of New York). Generally, a claim under Section 1983 accrues "'when the plaintiff knows or has reason to know of the injury which is the basis of [her] action.'" *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)). "Although federal law determines when a [S]ection 1983 claim accrues, state tolling rules determine whether the limitations period has been tolled, unless state tolling rules would 'defeat the goals' of [S]ection 1983." *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007). "Under New York law, the doctrines of equitable tolling or equitable estoppel 'may be invoked to defeat a statute of limitations defense when the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action.'" *Id.* at 642 (citation omitted). Under these doctrines, "'[d]ue diligence on the part of the plaintiff in bringing [an] action,' . . . is an essential element of equitable relief." *Id.* (citation omitted). In addition:

> [t]he plaintiff bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling or equitable estoppel claim "have ceased to be operational." If a plaintiff cannot "articulate[] any acts by defendants that prevented [him] from timely commencing suit" then he has "failed to meet [his] burden of showing that [he was] wrongfully induced by defendants not to commence suit."

*Id.* (citations omitted, all but first alteration in original).

Because the failure to file an action within the limitations period is an affirmative defense, Fed. R. Civ. P. 8(c)(1), a plaintiff is generally not required to plead that a claim is timely filed, *see Abbas*, 480 F.3d at 640. *Sua sponte* dismissal is appropriate, however, where the existence of an affirmative defense, such as the statute of limitations, is plain from the face of the pleading. *See Walters v. Indus. & Com. Bank of China, Ltd.*, 651 F.3d 280, 293 (2d Cir. 2011). Generally, a court must dismiss untimely *pro se* claims *sua sponte* so long as the court grants the *pro se* litigant notice and an opportunity to be heard before dismissal. *See Abbas*, 480 F.3d at 640.

While Plaintiff seems to allege that ACS continued to commit constitutional violations against her until 2023, she also alleges that ACS's proceedings against her ended in 2014,[4] and Plaintiff has attached a document to her complaint from what appears to be ACS stating that it would stop providing "Preventive Services" to Plaintiff's son in May 2014 because Plaintiff's son would become 18 years of age. (ECF 1, at 14, 69.) Plaintiff does not specify the date of her deceased son's death, but she attached to her complaint a copy of an email she sent, dated May 10, 2021, which seems to indicate that her son's death occurred before that date. (*Id.* at 53.) The Court, in its February 2, 2022 order in *Sterling I*, noted that Plaintiff alleged in that action that her son died on November 28, 2020. *Sterling*, 2022 WL 329266, at *2.

Plaintiff did not file the complaint commencing the present action until July 29, 2024, more than nine years after, it appears, ACS ended its child abuse investigation of Plaintiff; more than 10 years after ACS seems to have stopped providing services to Plaintiff's son; and, apparently, more than three years after his death. Thus, it would appear that the applicable limitations periods to bring any claim under Section 1983 arising from "the deprivation of [Plaintiff's] parental rights when ACS [allegedly] wrongfully accused her of child abuse and removed her son from her care," including "claim[s] . . . that may implicate the substantive component of the Due Process Clause of the Fourteenth Amendment," *Sterling*, 2022 WL 3030613, at *4 n.3, have expired. Plaintiff has alleged nothing that would justify the equitable tolling of those limitations periods. The Court therefore dismisses these claims as untimely, for

---

[4] Plaintiff has attached to her complaint a letter from the New York State Office of Children and Family Services's Child Abuse and Maltreatment Register, dated July 3, 2013, indicating that, "as a result of the assessment made by the local child protective service, no credible evidence was found to believe that the child(ren) has been abused or maltreated," thus, a "report of suspected child abuse or maltreatment" was determined to be "'unfounded.'" (ECF 1, at 75.)

failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but grants

Plaintiff 30 days' leave to file an amended complaint to allege facts showing why these claims

are timely or why the applicable limitation periods should be equitably tolled, *see Abbas*, 480

F.3d at 640.

## H.    Claims of employment discrimination under Section 1983

Plaintiff seems to assert claims of employment discrimination, which the Court

understands as also brought under Section 1983. With regard to one set of these claims, Plaintiff

appears to allege that she worked for an undisclosed community college and that, after working

there for nearly 20 years, she noticed that her salary had been reduced to an entry-level

employee's salary. She states that, when she complained to her supervisor about it, her

supervisor raised the issue with her own supervisor, who stated that "she felt very bad about it,

but it was not under her control and that she cannot do anything about it." (ECF 1, at 11.)

According to Plaintiff:

> it was the defendants . . . that handle payrolls of the Community College, and that
> their transactional, unsupervised, ethical monopolistic contractors are very active
> throughout that whole system, as well as in the hospital system where through
> their affiliations based on the devolution of the power of the office of the
> defendants . . . with no supervision, nor oversight, and they misuse that power to
> carry out their ethnic cleansing and destroy innocent individuals like the plaintiff
> and her son with disabilities lives. [*sic*]

(*Id.* at 11-12.) Plaintiff states that she:

> is suing the defendants . . . , which hooked her and her son . . . to their
> unsupervised, transactional, unprofessional, inhumane, ethical monopolistic
> contractors which in turn, to earn windfall money and suck taxpayers money,
> baselessly hooked plaintiff and her son to hospitals like NYCCC, children's center
> where Bob . . . was unnecessary institutionalized there even passing his 18 years
> old at the children's center under the ACS and its Preventive Services, because the
> vendor, trader of the plaintiff's son to the Jewish psychiatric camp FEGs, and Mr.
> Allen McCormick one of the defendants['] . . . inter-state human trafficking
> contractors, was in Florida State running his business . . . and coping with
> embezzlement in court, and while the plaintiff was spending all her active time,

> instead of . . . working, . . . fighting to deliver Bob her son from the
> defendants. . . .

(ECF 1, at 11-12.) Plaintiff does not specify the dates of the abovementioned alleged events.

As to another set of claims, Plaintiff alleges the following:

> I applied for a NYC[] job position, and on July 27, 2023, I got a great interview,
> but suddenly sunk into deep emotional distress, despair, hopelessness, because of
> the Defendants' intertwined networks that is always after me, destroying my
> family, my professional and social life through their monopolistic power on the
> Defendants that unconditionally hooked me to that monopolistic contractor.

(*Id.* at 34.) She also alleges that, "when I had my interview on July 27, 2023, and suddenly

remembered all the ordeals my son went through[] because of Defendants and [their]

monopolistic contractors' address where my complete address should have been, [i]t drowned

me in deep emotional distress, and a lot of pain [*sic*]." (*Id.* at 36.)

All of these allegations fail to state a claim. A claim for relief under Section 1983 must

allege facts showing that the defendants acted under the color of a state "statute, ordinance,

regulation, custom or usage." 42 U.S.C. § 1983. Thus, to state a claim under Section 1983, a

plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States

was violated, and (2) the right was violated by a person acting under the color of state law, or a

"state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988); *Meadows v. United Servs., Inc.*, 963

F.3d 240, 243 (2d Cir. 2020) ("State action [for the purpose of Section 1983 liability] requires

*both* . . . the exercise of some right or privilege created by the State . . . *and* the involvement of a

person who may fairly be said to be a state actor." (internal quotation marks and citation omitted,

emphasis in original)).

A plaintiff must also allege facts showing the individual state actor defendants' direct and

personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of

Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal

involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award

of damages under [Section] 1983." (internal quotation marks omitted)). A defendant may not be

held liable under Section 1983 solely because that defendant employs or supervises a person who

violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held

liable for the unconstitutional conduct of their subordinates under a theory of *respondeat*

*superior*."). Rather, "[t]o hold a state official liable under [Section] 1983, a plaintiff must plead

and prove the elements of the underlying constitutional violation directly against the official."

*Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

At the pleading stage, to state a claim of employment discrimination under Section 1983,

"a plaintiff must plausibly allege that (1) the employer took adverse employment action against

[her], and (2) [her] race, color, religion, sex, or national origin was a motivating factor in the

employment decision." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86, 88 (2d Cir.

2015). A plaintiff states these claims "by alleging facts that directly show discrimination or facts

that indirectly show discrimination by giving rise to a plausible inference of discrimination."

*Vega*, 801 F.3d at 87. "[A] plaintiff pursuing a claim for employment discrimination under

[Section] 1983 . . . must establish that the defendant's discriminatory intent was a 'but-for' cause

of the adverse employment action or the hostile environment."[5] *Naumovksi v. Norris*, 934 F.3d

200, 214 (2d Cir. 2019).

---

[5] A person asserting claims of employment discrimination under Title VII of the Civil
Rights Act of 1964 ("Title VII"), however, unlike claims under Section 1983, must assert claims
against her employer or her prospective employer, which is usually not an individual. *Kern v.
City of Rochester*, 93 F.3d 38, 44-45 (2d Cir. 1996); *see Vega*, 801 F.3d at 88. The pleading
standard for claims of employment discrimination under Title VII is, otherwise, the same as the
pleading standard for such claims under Section 1983, except that, as to claims under Title VII,
there is no state-action requirement and a plaintiff need merely plead that her race, color,
religion, sex, or national origin was a substantial or motivating factor in the employer's or

To the extent that Plaintiff asserts claims of employment discrimination under Section 1983, she does not name an individual state actor as a defendant, nor does Plaintiff allege any facts showing that such an individual would not have taken any alleged adverse employment action against her but for her race, color, religion, sex, or national origin.[6] The Court therefore dismisses these claims for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(ii), but grants Plaintiff 30 days' leave to file an amended complaint in which she names an individual state actor and/or her employer or prospective employer as a defendant, and alleges facts sufficient to state a claim of employment discrimination under Section 1983 and/or Title VII.

## I.    Leave to replead in an amended complaint

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Indeed, the Second Circuit has cautioned that federal district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be

---

prospective employer's adverse employment action. *Vega*, 801 F.3d at 85-86; *see Naumovksi v. Norris*, 934 F.3d 200, 214 (2d Cir. 2019).

[6] Even if the Court were to construe Plaintiff's complaint as asserting claims of employment discrimination under Title VII, Plaintiff does not clearly specify, other than the City of New York, who her employer or prospective employer was, name that employer or prospective employer as a defendant and, as to all such claims (including any against the City of New York) does not allege any facts showing that her race, color, religion, sex, or national origin was a substantial or motivating factor with respect to any adverse employment action taken against her by her employer or prospective employer.

able to allege additional facts to state valid claims with respect to those claims for which the Court has granted Plaintiff leave to replead, the Court grants Plaintiff 30 days' leave to file an amended complaint in which to address the deficiencies outlined above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order, which includes dismissing Plaintiff's remaining claims under state law because the Court declines to consider such claims under its supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

While the Court empathizes with Plaintiff regarding the death of her son, the Court warns Plaintiff not to assert, in her amended complaint, any of the claims that she raised in *Singleton I* that were dismissed in that action on the merits and any claims dismissed in this order without leave to replead. The Court also strongly advises Plaintiff not to include in her amended complaint any antisemitic references or any other derogatory language. She should focus on specific fact about events or actions that underlie her claims.

## CONCLUSION

The Court dismisses this action for the reasons set forth in this order, but grants Plaintiff 30 days' leave to replead certain claims in an amended complaint, as specified above.

If Plaintiff does not file an amended complaint within the time allowed, the Court will direct the Clerk of Court to enter a judgment dismissing this action for the reasons set forth in this order, which includes dismissing Plaintiff's remaining claims under state law because the Court declines to consider those claims under its supplemental jurisdiction. *See* 28 U.S.C. § 1367(c)(3).

The Court certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and, therefore, IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Court directs the Clerk of Court to hold this matter open on the docket until a civil judgment is entered.

SO ORDERED.

Dated:    March 13, 2025
          New York, New York

          /s/ Laura Taylor Swain
          LAURA TAYLOR SWAIN
          Chief United States District Judge